UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HEATHER SHEREE SANDERS, an individual, <br><br> Plaintiff, <br><br> v. <br><br> YOGA UNION INC., a corporation; YOGA UNION, Inc. dba Yoga Unify and/or Yoga Unified, Inc., a corporation; Yoga Unified, Inc., a corporation; Yoga Unify, Inc., a corporation; NEIL HACKMAN a/k/a RAVI SINGH, an individual; JUDY WEAVER, an individual; DOES 1-50, inclusive; and ROE CORPORATIONS 1-50, inclusive, <br><br> Defendants. | Case No. 3:23-cv-00007-LRH-CLB <br><br> ORDER |

Before the Court is Defendants Yoga Union, Inc., Yoga Unify, Inc., Neil Hackman a.k.a. Ravi Singh, and Judy Weaver's (collectively, "Defendants") Motion to Dismiss Complaint for Lack of Personal Jurisdiction and Improper Forum. ECF No. 13. Also before the Court is Defendants' Motion to Change Venue or Transfer.[1] ECF No. 14. Plaintiff Heather Sheree Sanders ("Plaintiff") filed a response in opposition to the motion to dismiss in which she requested oral argument. ECF No. 18. Defendants replied. ECF No. 19. The Court denies Plaintiff's request for oral argument. For the reasons articulated herein, the Court grants Defendants' motion to dismiss without prejudice to Plaintiff bringing this action in a more appropriate forum.

---

[1] After careful review, the Court notes that the Defendants' motion to dismiss (ECF No. 13) and motion to change venue or transfer (ECF No. 14) are the same document. It is the Court's understanding that the motion to change venue or transfer is an alternative pleading to the motion to dismiss. This Order addresses the motion to dismiss. As such, the pleadings referenced herein are referred with respect to the motion to dismiss.

1

I.     **BACKGROUND**

This matter primarily involves a mixture of failure to pay claims, breach of contract claims, and tort claims. Plaintiff alleges the following in the Complaint: In April of 2019, Yoga Unify, Inc., a Florida non-profit organization (the "Organization") was collaboratively conceived by Neil Hackman a.k.a. Ravi Singh ("Hackman") and Judy Weaver ("Weaver") following their participation as panelists during the Sedona Yoga Festival, Plaintiff's event. ECF No. 1 at 2. On January 1, 2020, Plaintiff—who volunteered for the Organization since July 2019—began working for Defendants pursuant to an Offer Letter.[2] *Id.* By mid-2020, Plaintiff was named a co-founder of the organization because of the significant contributions she made. *Id.* at 2, 3.

Plaintiff, Hackman, and Weaver operated as a decision-making team for the Organization alongside other Board members. *Id.* at 3. Plaintiff's contributions to the Organization included, but were not limited to: (1) loaning funds to the organization; (2) presenting amended by-laws to the organization's Board which were later adopted; (3) creating the employee handbook and "Foundational Strategic Plan," (4) determining standards for human resources' compliance across multiple states, (5) raising over $300,000 in funding for the Organization; (6) formalizing internal Board structures, (7) building membership platforms and a website;  (8) branding and social media; (9) holding regular community events; (10) managing multiple independent contractors; and (11) maintaining communications with a growing database of members. *Id.* at 3, 4.

After obtaining the Organization's first $125,000 worth of funding, Plaintiff claims that Weaver delayed salary payments and did not formally document her initial sixteen-and-a-half months' worth of work. *Id.* at 5. After receiving initial salary payments, Weaver and Plaintiff's relationship deteriorated. *Id.* On or about June 17, 2021, Plaintiff requested that Hackman provide a trained mediator at meetings to help ease tensions between Plaintiff and Weaver. *Id.* at 6. Over the next few months, Hackman and Weaver's aggression towards Plaintiff grew, resulting in Plaintiff's inhibited job performance. *Id.* Specifically, Plaintiff notes that on or about September 1, 2021, a scheduled discussion, in which the Board was to plan its retreat, turned into an

---

[2]   Plaintiff alleges she resided in Bisbee, Arizona from January 1, 2020, through January 24, 2020, before moving to Carson City, Nevada. ECF No. 1 at 2. Plaintiff claims to have lived in Nevada at all relevant times to this action.

2

impromptu evaluation of Plaintiff's work-product. *Id*. at 7. On or about September 15, 2021, Hackman and Weaver instructed Plaintiff to stop work and take a sabbatical. *Id*. at 9.

Shortly thereafter, Hackman and Weaver took control of the organization's bank accounts and transferred funds to an account accessible only by them, without Board approval. *Id*. at 9, 10. Struggles over access to and control of the Organization's bank accounts ensued. *Id*. at 10. As a result, Plaintiff prepared and filed a whistleblower complaint and submitted it to the Organization's compliance officer for distribution to and review by the Board. *Id*. Immediately preceding the Organization's regularly scheduled September 2021 Board meeting, Hackman and Weaver called an emergency board meeting in which they argued that Plaintiff was incompetent and should be removed from the Organization. *Id*. at 11. Plaintiff received no notice of the emergency meeting. *Id*. At the regularly scheduled September 2021 Board meeting, the Board resolved to maintain Plaintiff as the Organization's Executive Director and reinstate her access to all systems and accounts. *Id*. Following the scheduled meeting, Hackman and Weaver held two additional "email meetings" that resulted in Plaintiff's termination. *Id*. at 12. After Plaintiff's employment ended, two Board members resigned and all but one staff member resigned. *Id*.

Plaintiff argues that Defendants did not pay much of the monies owed to her in connection with her Offer Letter and general employment. *Id*. at 13, 14. Plaintiff also argues that Hackman and Weaver intentionally harmed Plaintiff's reputation, business, and chances for reemployment within the greater yoga-community. *Id*. at 13. Plaintiff's Complaint alleges twelve causes of action against Defendants: (1) failure to properly pay wages in violation of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, *et seq*.; (2) failure to properly pay minimum wages in violation of the Nevada Constitution, Article 15, § 16(A); (3) failure to properly pay wages for all hours worked in violation of Nevada Revised Statute §§ 608.140 and 608.160;  (4) failure to timely pay all wages due and owing upon termination pursuant to Nev. Rev. Stat. §§ 608.140 and 608.020 , *et. seq*.; (5) breach of contract – Offer Letter; (6) breach of contract – Loan Agreement; (7) breach of the covenant of good faith and fair dealing; (8) unjust enrichment; (9) conversion; (10) intentional interference with contractual relations; (11) intentional interreference with prospective economic

advantage; and (12) wrongful termination in violation of Nevada public policy.³ *Id*. at 19–24. Defendants filed a motion to dismiss Plaintiff's Complaint based on lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and improper forum under Federal Rule of Civil Procedure 12(b)(3). ECF No. 13 at 2. The motion as to personal jurisdiction is addressed below.

## II.  LEGAL STANDARD

A court may dismiss a complaint for lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). Where a defendant challenges the court's personal jurisdiction, the plaintiff bears the burden of demonstrating the court has jurisdiction over the defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal citation omitted); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (internal citation omitted). A plaintiff makes a prima facie showing of personal jurisdiction by introducing competent evidence of essential facts which support jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *see also Trump v. District Court*, 857 P.2d 740, 743 (Nev. 1993). Where, as here, the court receives only written materials, the plaintiff need only make a prima facie showing through its pleadings and affidavits that the exercise of personal jurisdiction over the defendant is proper. *Schwarzenegger*, 374 F.3d at 800. Although a plaintiff cannot simply rest on the bare allegations of its complaint, the uncontroverted allegations in the plaintiff's complaint are taken as true, and conflicts between the facts contained in the parties' affidavits are resolved in the plaintiff's favor. *Id.*

To establish personal jurisdiction, the plaintiff must show that the forum's long-arm statute confers personal jurisdiction over the out-of-state defendants and that the exercise of jurisdiction does not violate federal constitutional principles of due process. *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986). Nevada's long-arm statute permits the exercise of jurisdiction on any basis consistent with federal due process. Nev. Rev. Stat. § 14.065(1). Federal due process requires that a defendant "have certain minimum contacts

---

³ The Court notes that Plaintiff's Complaint incorrectly labels the breach of the covenant of good faith and fair dealing claim and the unjust enrichment claim as the "SEVENTH CAUSE OF ACTION." *See* ECF No. 1 at 19. For purposes of this Order, the Court assumes Plaintiff intended the unjust enrichment claim to be labeled as the "EIGHTH CAUSE OF ACTION." The number of each subsequent cause of action is adjusted accordingly herein.

4

with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations and citations omitted).

### III. DISCUSSION

Personal jurisdiction over a non-resident defendant may be either general or specific. *Helicopteros Nationales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). A court may exercise general jurisdiction over a defendant if the defendant's activities in the forum are either "substantial" or "continuous and systematic" such that the defendant's activities approach a "physical presence" in the forum, even if those contacts did not give rise to the action. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (holding that California had personal jurisdiction over a defendant because the defendant filed a challenge to the plaintiff's registration for its domain name that affected its ability to use that domain name in California), *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) (rejecting any requirement that jurisdictionally relevant effects must be caused by wrongful acts under the *Calder* effects test). Here, it is undisputed that Plaintiff does not allege general jurisdiction over the non-resident Defendants. ECF No. 18 at 8; ECF No. 19 at 2. The Court agrees and will not exercise general jurisdiction over the Defendants because their activities in Nevada, if any, are neither so "substantial" nor "continuous and systematic" such that the Organization could be considered to have a "physical presence" here.

In contrast to general jurisdiction, for a court to exercise specific jurisdiction, the action must arise out of the defendant's forum-related activities such that he can reasonably anticipate being haled into court. *Bancroft*, 223 F.3d at 1086. Specific jurisdiction is determined by analyzing the "quality and nature of the defendant's contacts with the forum state in relation to the cause of action*." Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). The Ninth Circuit uses a three-part test for specific jurisdiction: (1) the defendant must purposefully direct his activities to the forum state or purposefully avail himself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of its laws; (2) the claim must arise out of or relate

to the defendant's forum related activities; and (3) the exercise of jurisdiction must be reasonable. *See Bancroft*, 223 F.3d at 1086; *see also Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of proving the first two requirements. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017). After a plaintiff makes a successful showing on one and two, "the burden then shifts to the defendant to present a compelling case that exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (internal quotations omitted).

There are two distinct and claim-dependent methods for satisfying the first requirement of the three-part specific jurisdiction in the Ninth Circuit. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). Ninth Circuit courts commonly use the "purposeful availment" test to determine specific jurisdiction for contract claims and the "purposeful direction" test for tort claims. *Id*. (citing *Schwarzenegger*, 374 F.3d at 802). Because Plaintiff brings both type of claims, each test is relevant and the Court proceeds with its analysis accordingly. *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020).

In their motion, Defendants argue that Plaintiff does not satisfy her burden as to the first requirement because she fails to allege any forum-specific activities that show the Defendants purposefully availed themselves of the privilege of conducting business in Nevada or purposefully directed their activities at Nevada. ECF No. 13 at 9. In response, Plaintiff argues that Defendants purposefully availed themselves of Nevada's market, customers, and laws by recruiting and hiring Plaintiff with the understanding that she would work from Nevada. ECF No. 18 at 9–12. Plaintiff also alleges that the Defendants contracted with Nevada-residents and businesses by hiring a Nevada-based bookkeeper, selling memberships to Nevada-residents, and leasing commercial real estate. *Id*. at 11. Plaintiff argues that similar facts demonstrate purposeful direction. *Id*. at 12.

In reply, Defendants argue that Plaintiff must show personal jurisdiction over each of the Defendants and that Plaintiff particularly fails to do so with regard to Hackman and Weaver. ECF No. 19 at 2. Elaborating, Defendants claim that the only links to Nevada that Hackman and Weaver have resulted exclusively from and specifically through Plaintiff by virtue of her residence there, not because they or the organization purposefully availed themselves of the privilege of Nevada-based business and protections, or purposefully directed their activities there. ECF No. 19 at 6.

The Court finds that it cannot exercise specific jurisdiction over the Defendants because, under the first requirement of the Ninth Circuit three-part test, they did not purposefully avail themselves to conducting activities in Nevada nor did they purposefully direct their activities at Nevada. Purposeful availment requires that the defendant exhibit affirmative conduct allowing or promoting business transactions within the forum state, thus invoking the benefits and protections of its law. *Hanson v. Denckla,* 357 U.S. 235, 253 (1958); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986). Specific jurisdiction must arise out of "contacts that the defendant *himself* creates with the forum . . ." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal citations omitted) (emphasis added). Purposeful availment examines whether a defendant's contacts with the forum resulted from her own actions or solely the actions of the plaintiff. *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988).

Alternatively, the purposeful direction test in the Ninth Circuit is comprised of three-distinct inquiries more commonly referred to as the "*Calder* effects test." *Schwarzenegger*, 374 F.3d at 803 (citing *Calder v. Jones*, 466 U.S. 783, 789–90 (1984)). The Ninth Circuit has explained that, under the *Calder* effects test, a court must determine (1) if the defendant committed an intentional act, (2) aimed at the forum state, and (3) caused harm the defendant knows is likely to occur in the forum state. *Id.* (citing *Dale Food*, 303 F.3d at 1111 (internal citations omitted)); *see also Calder*, 466 U.S. at 789–90.

Here, the Court finds that Plaintiff is the sole source of any connection the Defendants have to Nevada. It appears that Plaintiff is relying majorly on her own presence in Nevada to argue that the Defendants availed themselves of the privileges of doing business in Nevada or directed their activities here. The Defendants' contacts with Nevada "may be intertwined with [their] transactions or interactions with [Plaintiff] . . . But a defendant's relationship with a plaintiff . . . standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286. Plaintiff's relocation from Arizona to Nevada is the impetus for any contacts the Defendants may have had with Nevada. For example, it is largely unlikely that Defendants would have hired a bookkeeper in Nevada or leased office space here but for Plaintiff's decision to relocate.

///

Furthermore, Plaintiff fails to allege that this Court has personal jurisdiction over Hackman and Weaver as individuals. First, Hackman and Weaver do not reside, and never have resided, in Nevada. Second, all business conducted by Hackman and Weaver in conjunction with the Organization was conducted outside of Nevada. It is likely that such business was conducted through phone calls, video conferencing software, and other forms of communication much like the board "email meetings" Plaintiff alleges took place before her termination. Although, such forms of communication may traverse state lines, they only touch Nevada momentarily; such instantaneous and brief encounters do not avail recipients and participants of the privilege of conducting business here or invoke the benefits and protections of Nevada's laws. *See Gonzalez v. U.S. Human Rights Network*, 512 F.Supp.3d 944, 955 (D. Ariz. 2021) (citing *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985)).

The cornerstone of the "purposeful availment" and the "purposeful direction" tests is founded upon the defendant's affirmative conduct with the forum. Significantly, not a single defendant, individual or corporate, is or ever has been domiciled or incorporated in Nevada.

Here, the Defendants superficially reached Nevada because of Plaintiff's brief residence here. While the Complaint alleges that Defendants affirmatively hired a bookkeeper and rented office space in Nevada, such transactions are surface level, at best, and most certainly do not give rise to or relate to Plaintiff's claims. *See Walden*, 571 U.S. at 284. Simply, the quality and nature of Defendants contacts with Nevada materialized after and because of Plaintiff's move to the State. Moreover, they are significantly unrelated to the causes of action alleged.

The Court finds that the alleged contacts Defendants had with Nevada are too attenuated to create a sufficient connection with the forum to exercise personal jurisdiction. For these reasons, the Court will not exercise personal jurisdiction over the Defendants. Accordingly, the Court grants Defendants' motion to dismiss for lack of personal jurisdiction without prejudice to Plaintiff bringing this action in a more appropriate forum where personal jurisdiction is not lacking.

### IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (ECF No. 13) is **GRANTED** without prejudice to Plaintiff bringing this action in a more appropriate forum.

1  IT IS FURTHER ORDERED that Defendants' motion for change of venue or transfer (ECF No. 14) is **DENIED** as moot.

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment accordingly and close this case.

IT IS SO ORDERED.

DATED this 29th day of September, 2023.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE